IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| MISTY SPEARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | FILE NO. 2:18-cv-152-LGW-BWC |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY FROM NON-PARTY**
**CHEROKEE FUNDING, LLC AND BRIEF IN SUPPORT THEREOF**

Defendant Wal-Mart Stores East, LP respectfully moves this Court, pursuant to Fed. R.

Civ. P. 26 and 37, to compel non-party Cherokee Funding, LLC's complete responses to

Defendant's Subpoena, and shows this Honorable Court as follows:

**I.       INTRODUCTION AND PROCEDURAL BACKGROUND**

This rather straightforward premises liability claim arises from a September 3, 2017 slip

and fall where Plaintiff claims to have suffered serious injuries which resulted in over $167,000.00

in medical expenses. During the Parties' September 23, 2019 mediation, Defendant learned that

non-party Cherokee Funding ("Cherokee"), a medical funding company, had purchased the

medical receivables from OrthoOne, one of Plaintiff's treating providers, giving Cherokee a

financial interest in the instant case. (*See* Cherokee Lien Assignment; Ex. A). Upon learning this

information, Defendant served a subpoena on Cherokee on October 30, 2019, pursuant to Fed. R.

Civ. P. 45(a)(1)(c), seeking certain documents related to Cherokee's role in funding Plaintiff's

medical care. (*See* Defendant's subpoena to Cherokee Funding; Ex. B).

On November 13, 2019, Cherokee filed its "Response and Objections to Defendant's

Subpoena to Produce Documents, Information, or Objects." (*See* Cherokee's Response; Ex. C).

1

Cherokee's Responses consisted of a litany of blanket and improper objections, such as Cherokee's contention that Defendant's subpoena was "annoying," "embarrassing," and "incriminating." (*Id.* at p. 5). Cherokee also took it upon itself to make relevancy determinations, by withholding documents on grounds that the documents sought by Defendant were "wholly irrelevant and immaterial" or constituted "privileged matters." (*Id.*) Further, Cherokee's Response asserts (improper) objections claiming the documents requested by Defendant are "irrelevant and inadmissible evidence of a collateral source under Georgia law." (*Id.* at p. 8). Lastly, Cherokee objects to producing documents on grounds that such documents "constitute, contain, or reveal proprietary and confidential business information and trade secretors belonging to Cherokee that are not subject to discovery." (*Id.*) Although Cherokee's Response indicated that Cherokee would produce documents responsive to Requests 2, 4, 5, and 8 in Defendant's Subpoena, "to the extent such documents exist," Cherokee failed to produce any documents and failed to notify Defendant whether or not such documents existed. (Ex. C).

On December 5, 2019, counsel for Defendant sent correspondence to Cherokee, pursuant to Fed. R. Civ. P. 37, to obtain complete responses to Defendant's subpoena. (Defendant's Good Faith Letter to Cherokee; Ex. D). Counsel for Cherokee responded to Defendant's Rule 37 correspondence on December 16, 2019, asserting that Cherokee had no documents responsive to Defendant's subpoena topic number 5, and reiterating the same blanket objections to the remaining portions of Defendant's subpoena. (*See* Correspondence from Attorney H. Michael Dever; Ex. E).

On January 16, 2020, counsel for Defendant sent Cherokee a second good faith letter in a final attempt to obtain documents. (*See* Defendant's Second Letter to Cherokee; Ex. F). Defendant once again requested that Cherokee produce all responsive documents and that Cherokee produce a privilege log, in the event Cherokee was withholding responsive documents based on privilege.

(*Id.*) Counsel for Cherokee responded in a letter dated January 21, 2020, asserting Cherokee had no documents responsive to Defendant's Requests No. 5 or 8, while assuring Defendant that documents responsive to Requests 2 and 4 would be produced by January 24, 2020. (*See* January 21, 2020 correspondence; Ex. G). However, Cherokee maintained its previous objections to Defendant's subpoena. (*Id.*) Despite Cherokee's concession of being in possession of responsive documents, Cherokee has refused to produce same and has failed to provide Defendant with a privilege log to allow Defendant to assess the validity of any privilege or confidentiality objection.

Counsel for Defendant respectfully submits that they have conferred with counsel for Cherokee pursuant to Fed. R. Civ. P. 26 and 37, as well as Local Rule 26.5, in a good-faith effort to obtain the requested evidence, but to date, Cherokee has failed to produce a single document to Defendant.

## II.   CHEROKEE'S DEFICIENT RESPONSES AND OBJECTIONS

Defendant seeks to compel complete responses from Cherokee to four of its subpoena topics. In accordance with Local Rule 26.5, each of the requests at issue are listed below, followed by Cherokee's response and Defendant's argument and citation to authority for why Cherokee should be compelled to respond. Defendant has not included the verbatim language of Cherokee's objections which follow Cherokee's responses, as such objections are not assigned to Defendant's specific requests but are instead lumped together **after** Cherokee's responses to Defendant's subpoena topics and are spread throughout seven pages. (Ex. C). Therefore, Defendant refers this Court to Exhibit C, pages 5-11, for the precise language of Cherokee's objections.

### A.   The Specific Subpoena Topics and Responses at Issue

**Defendant's Request For Production No. 1:**

All communications relating in any way to this case, <u>or</u> to this Plaintiff's medical or legal

circumstances (regarding this or any other case), between any person affiliated with **Cherokee Funding, LLC**, and all of the following: (1) **Touchton Surgery Center**, (2) any member of Plaintiff's legal team (including staffers working for Plaintiff's <u>past</u> or <u>present</u> counsel of record). The requested communications include all of the following:

    a.   All text messages;

    b.   All emails;

    c.   All visual voicemail recordings or internal notifications of pending voice messages;

    d.   Any communications reflected in any practice management software;

    e.   All phone logs of calls or records of conversations; and

    ***Cherokee's Response:*** **See objections.**

**<u>Defendant's Request For Production No. 2:</u>**

All communications of any nature whatsoever about this case or this Plaintiff's medical or legal circumstances[.]

    ***Cherokee's Response:*** **To the extent such documents exist, they will be produced.**

**<u>Defendant's Request For Production No. 4:</u>**

All communications between anyone in your office and any physician or medical practice group regarding this Plaintiff, specifically including all referral agreements and any commentary exchanged with any provider regarding Plaintiff's lawsuit[.]

    ***Cherokee's Response:*** **To the extent such documents exist, they will be produced.**

**<u>Defendant's Request For Production No. 6:</u>**

Any and all contracts, liens, assignments of rights, agreements to pay, or other legal instruments potentially giving **Touchton Surgery Center**, **Cherokee Funding, LLC**, or anyone affiliated with either entity a financial interest in the outcome of this litigation[.]

*Cherokee's Response:* **See objections.**

## III.   ARGUMENT AND CITATION TO AUTHORITY

A party has the right to obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26 (a)(b)(1). **Information need not be admissible in evidence to be discoverable**. *Id*. "Relevancy is broadly construed and must be determined by consideration of the facts and circumstances of each case." *Vincent v. American Honda Motor Co., Inc.*, No. CV 108-067, 2009 WL 10678749, at *5 (S.D. Ga. June 17, 2009). Importantly, "[t]he Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). "When there is a doubt about relevance, a court should tend toward permitting discovery." *Vincent*, 2009 WL 10678749, at *5 (citing *Republic Envtl. Sys., Inc.*, 157 F.R.D. 351, 353 (E.D. Pa. 1994).

When discovery is sought from a non-party, the proper method of obtaining information is through a subpoena pursuant to Fed. R. Civ. P. 45. In the event a non-party withholds subpoenaed information under a claim that it is privileged, the non-party must expressly make such claim **and** "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). When a party from whom discovery is sought fails to fully respond, the party seeking such discovery may move for an order compelling disclosure or discovery. Fed. R. Civ. P. 37(a)(1) and 45(d)(2)(B).

### A.   The Documents Sought by Defendant Are Relevant and Discoverable to Show Potential Bias, Intent, and Motive

Defendant's subpoena to Cherokee seeks documents evidencing communications between Cherokee, Plaintiff's treating providers, and Plaintiff's counsel (Ex. B, Requests 1, 2, and 4), as

well as financial agreements such as contracts, liens, rate agreements, and assignment of benefits between Cherokee and Plaintiff's treating providers. (Ex. B, Request No. 6). The Eleventh Circuit has made clear that documents evidencing the relationship between treating physicians, medical funders, and plaintiff's counsel are relevant and admissible, as this information tends to demonstrate bias, intent, and motive. *See, e.g., ML Healthcare Servs., LLV v. Publix Super Markets, Inc.*, 881 F.3d 1294, 1301 (11th Cir. 2018); *Houston v. Publix Supermarkets, Inc.*, No. 1:13-CV-206-TWT, 2015 WL 4581541, at *1 (N.D. Ga. July 29, 2015); *Rangel v. Anderson*, 202 F.Supp.3d 1361, 1373 (S.D. Ga. 2016).[1] Georgia trial courts have also permitted this type of discovery and have allowed same into evidence at trial. *Stephens v. Castano-Castano*, 346 Ga. App. 284, 291 (2018) (holding a plaintiff's treating provider's financial interest in the outcome of a case is highly relevant to the issue of credibility and potential bias as provider has become "an investor of sorts in the lawsuit.")

Despite Cherokee's contention that the information sought by Defendant is shielded from discovery under Georgia's collateral source rule, and briefly setting aside the critical distinction between discoverability and admissibility, this Court has previously held that a medical lien funding company which has paid for a plaintiff's medical treatment **is not a traditional collateral source**. *Rangel*, 202 F.Supp.3d at 1373. Unlike a traditional insurance company, Cherokee's payments do not reduce Plaintiff's financial obligations. Further, in *Rangel*, this Court noted that a medical funding company's involvement in a plaintiff's treatment is "**highly relevant to the**

---

[1]     Federal courts outside of Georgia have likewise agreed that documents surrounding the relationship between Plaintiff's counsel, treating physicians, and medical funding companies are discoverable. *See Ortiviz v. Follin*, 16-CV-02559-MSK-MEH, 2017 WL 3085515, at *4 (D. Colo. July 20, 2017) (subpoena was appropriate to investigate relationship between plaintiff, doctor, and funding company, citing *Rangel*); *Estrada v. Kaczinski,* No. 2:17-CV-952, 2018 WL 6313390, at *1 (D. Utah Dec. 3, 2018) (finding subpoena to funding company was enforceable to inquire into bias, intent, and motive, citing *ML Healthcare v. Publix*).

issue of Plaintiff's treating physicians' credibility and potential bias." *Id.* (emphasis added). *Rangel* emphasized the potential for bias is even greater in cases where the funding company referred a plaintiff to his or her medical providers because if the plaintiff receives a favorable recovery, the funding company "would arguably be more inclined to refer cases to those physicians in the future." Thus, the Court held that "the jury should consider the relationships between Plaintiff, Key Health [a medical funding company], and Plaintiff's physicians when assessing the credibility of Plaintiff's physicians' testimony." *Id.*

Here, Defendant should be permitted to conduct discovery surrounding communications and relationships between Cherokee, Plaintiff's funding company, Plaintiffs' treating providers, and Plaintiff's counsel. Cherokee describes itself as a "full-service direct funding company" which was "founded in 2011 **at the urging of several doctors and plaintiffs attorneys** who wanted a better, completely reputable, option for their clients." (Cherokee Funding Website Homepage; Ex. H) (emphasis added). "From day one, [Cherokee's] goal has been to **enable the best possible outcome for plaintiffs**[.]" (*Id.*) (emphasis added). Cherokee describes its medical funding process as follows: "[c]lients get treated **by healthcare providers in Cherokee's network**[,] Cherokee pays the healthcare provider for the patient's medical treatment[, and] Cherokee gets paid back from the proceeds of the patient's personal injury settlement." (Medical Funding FAQ portion of Cherokee Funding's Website; Ex. I) (emphasis added). Cherokee openly admits that it makes money by paying healthcare providers "**an amount less than invoice**." (*Id.* at p. 2) (emphasis added).

In addition to funding medical treatment for personal injury plaintiffs, Cherokee offers purchasing and servicing of medical liens. (Medical Lien Funding Portion of Cherokee Funding's Website; Ex. J). Cherokee offers financial solutions to healthcare providers by purchasing a

provider's existing medical liens and paying providers at the time of a personal injury plaintiff's treatment so providers can avoid holding liens. (*Id*.) As an added benefit to healthcare providers who partner with Cherokee, "Cherokee works with thousands of attorneys who often have clients in need of a provider to get the care they need." (*Id*. at p. 2). Therefore, Cherokee "**craft[s] a joint marketing effort with [their] attorney base to increase the referrals to [the healthcare provider's] site.**" (*Id*.) (emphasis added). The information sought by Defendant's four specific subpoena topics listed above cannot be deemed "irrelevant", especially in light of Cherokee's own descriptions about its business model and the incentives for medical providers to work with Cherokee in exchange for increased business exposure.

**B.      The Documents Sought by Defendant Are Likewise Relevant to Show The Reasonableness of Plaintiff's Medical Bills.**

Georgia law provides that, in a personal injury action, plaintiffs are "entitled to recover medical expenses arising from [their] injuries, including hospital charges, that are **reasonable and necessary**." *Showan v. Pressdee*, 922 F.3d 1211, 1218 (11th Cir. 2019) (*citing MCG Health, Inc. v. Knight*, 325 Ga. App. 349, 353 (2013)). In *Rangel*, this Court recognized a medical funding company's motivation for a plaintiff's medical bills to be higher. 202 F.Supp. 3d at 1374. Specifically, in *Rangel,* the Court noted that Key Health charged Plaintiff the full amount for medical procedures, while only paying the physician a reduced percentage of that amount and noted that the more procedures Plaintiff underwent, the more money Key Health stood to make. *Id*. The Court ultimately held that "evidence of the arrangement between Plaintiff, Key Health, and Plaintiff's physicians is relevant to the jury's assessment of the reasonableness of Plaintiff's medical treatment and the reasonable value of the medical services provided." *Id*.

In the instant case, the reasonableness of Plaintiffs' medical expenses, and in particular, the cost of Plaintiff's surgeries, which Defendant believes to have been funded by Cherokee, is

heavily disputed and Defendant's subpoena topic number 6 seeks to uncover documents to determine the reasonableness of such expenses. As in *Rangel*, Cherokee advertises on its website that it makes money by paying healthcare providers an amount less than what is invoiced to the Plaintiff (or defense counsel in negotiations). (Ex. I, p. 2). Thus, Defendant seeks to obtain documents identifying the specific amounts Cherokee pays to each of Plaintiff's providers (or the amount Cherokee purchases the provider's accounts receivables for), in comparison to the amount that is actually billed to Plaintiff. Importantly, however, Defendant does not seek to use this information in order to get a "set off" at trial. The information sought is solely to determine the reasonableness of the extent of Plaintiff's medical treatment and the reasonableness of the specific amounts Plaintiff was charged for her treatment.

### C.  Defendant's Arguments Surrounding Cherokee's General Objections to Defendant's Subpoena

Cherokee's "general objections" to Defendant's subpoena can be broken down into four categories: (1) the "catch-all" or boilerplate objections (asserting Defendant's requests are "harsh," "insulting," "annoying," "incriminating," and "irrelevant"); (2) privilege (including work-product, attorney-client, and common defense agreement); (3) collateral source[2]; (4) and confidentiality of proprietary information. (Ex. C, p. 5-11).

Cherokee's "catchall" or "boilerplate" objections are without merit. A party has no legal basis to withhold responsive documents simply because they believe a request is "embarassing,"

---

[2]     Defendant's arguments and citations to authority in response to Cherokee's collateral source objections are addressed in Section III (A), above and are not re-stated here, so as to avoid redundancy.

"annoying," or "insulting."[3] Further, Defendant is unaware as to how Cherokee's responses could possibly be incriminating in this context.

### 1.   *Cherokee's Privilege Objections*

As to Cherokee's privilege arguments, Cherokee has no grounds to assert the attorney-client privilege. "The attorney-client privilege applies to 'confidential communications **between an attorney and his client** relating to a legal matter for which the client has sought professional advice." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008) (*quoting Mead Data Cent., Inc., v. U.S. Dep't of Air Force*, 566 F.2d 242, 252 (D.D.C. 1977) (emphasis added). The party claiming the privilege bears the burden of establishing:

> "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a)claimed and (b) not waived by the client."

*United States v. Noriega*, 917 F.2d 1543, 1550 (11th Cir. 1990) (*quoting United States v. Kelly*, 569 F.2d 928, 938 (5th Cir. 1978). Here, Cherokee has failed to show how the documents sought by Defendant could invoke the attorney-client privilege and Cherokee has failed to provide a proper privilege log for Defendant to assess the basis for such claim.

Cherokee's "common defense doctrine" objections are likewise misplaced. The "common defense doctrine," or "common interest doctrine," as it is often called, "extends the attorney-client privilege to otherwise non-confidential communications in limited circumstances." *Hope For*

---

3    The Eleventh Circuit disfavors "boilerplate" discovery objections. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1358 (11th Cir. 1997); *Steed v. EverHome Mortgage Co.*, No. 08-13476, 2009 WL 139507, at *4 (11th Cir. Jan. 21, 2009).

*Families & Community Service, Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2009 WL 1066525, at *7 (M.D. Ala. April 21, 2009). The doctrine only applies "where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited to those communications made to further an ongoing enterprise." *Id*. There is no evidence in the instant case that Cherokee has a **legal**, as opposed to a **commercial** interest in this litigation. Cherokee gets repaid from any financial recovery Plaintiff obtains. Thus, the common defense doctrine does not apply as Cherokee's interest in this case is purely commercial.

2.      ***Cherokee's Confidentiality Concerns***

Finally, Cherokee asserts that the information or documents sought by Defendant's Requests contain proprietary or confidential business information and trade secrets but has failed to specify **which** subpoena topics it objects to on these grounds. Importantly, "[t]here is no absolute privilege for trade secrets and similar confidential information." *Festus & Helen Stacy Found., Inc., v. Merrill Lynch, Pierce Fenner & Smith Inc.,* 432 F.Supp.2d 1375, 1380 (N.D. Ga. 2006) (*quoting Fed. Open Mkt. Comm. Of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979). Rather, "courts weigh the claim to privacy against the need for disclosure…" *Id.* at 1380. Because Cherokee has simply asserted a blanket objection without any explanation as to how its documents are proprietary and without producing a privilege log, Defendant is left with no information for which to assess the viability of Cherokee's confidentiality and proprietary objections. Further, Cherokee never even attempted to move this Court for a Confidentiality or Protective Order in order to fully comply with Defendant's subpoena, nor did Cherokee seek to quash Defendant's subpoena.

Cherokee's failure to provide sufficient information to verify the privilege it asserted can also be grounds for finding of a waiver of the asserted privilege. *See, e.g., Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 664 (S.D. Ind. 1991)(requiring privilege log which lists, "for each

separate document, the authors and their capacities, the recipients (including copy recipients) and their capacities, the subject matter of the document, the purpose for its production, and a detailed, specific explanation of why the document is privileged or immune from discovery"); *Resolution Trust Corp. v. Diamond*, 137 F.R.D. 634, 641-42 (S.D.N.Y. 1991) (finding index including date, addressor, addressee, document type, and grounds for nondisclosure found insufficient). As in discovery responses "[b]lanket and general objections do not provide sufficient detail about the documents ... and [defendant] was obligated to provide a privilege log or a more detailed response to the request for production to satisfy Rule 26 and 34's requirements." *Universal City Dev. Partners, Ltd. v. Ride & Show Eng'g, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005). *See also, Nat'l Union Fire Ins. Co. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (general allegation of privilege is insufficient; if a privilege is not specified and substantiated, it may be lost) (citations omitted).

Under Fed. R. Civ. P. 45(e)(2)(A), a person withholding information responsive to a subpoena on grounds that such information is privileged must: (1) "expressly make the claim" and (2) "describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Here, Cherokee has fallen far short of the requirements set forth in Fed. R. Civ. P. 45 and has provided nothing more than mere assertions that a privilege exists to justify the withholding of documents responsive to Defendant's subpoena topic numbers 1, 2, 4, and 6.

## CONCLUSION

For the reasons set forth herein, Defendant respectfully requests that this Court **GRANT** Defendant's Motion to Compel and enter an Order compelling Cherokee Funding to fully and completely respond to Defendant's subpoena topics 1, 2, 4, and 6 by producing all responsive

documents, and enter an award of reasonably attorney's fees and expenses pursuant to Fed. R. Civ.

P. 37(a)(5)(A).[4]

       Respectfully submitted this 8th day of May, 2020.

                                  **DREW ECKL & FARNHAM, LLP**

                                  */s/ Elissa B. Haynes*
                                  Elissa B. Haynes
                                  Georgia Bar No. 804466

303 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30308
(404) 885-1400 Phone
(404) 876-0992 Fax
HaynesE@deflaw.com

                                  */s/ Garret W. Meader*
                                  Garret W. Meader
                                  Georgia Bar No. 142402
                                  Carrie B. Coleman
                                  Georgia Bar No. 602886

777 Gloucester Street, Suite 305
Brunswick, Georgia 31520
(912) 280-9662 Phone
gmeader@deflaw.com
ColemanC@deflaw.com

9743177/1
05695-135040

---

[4]       Counsel for Defendant will provide an Affidavit, as well as supporting documentation for any attorney's fees award, should the Court request same.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

MISTY SPEARS,                                )
                                             )
          Plaintiff,                         )
                                             )
     v.                                      )     CIVIL ACTION
                                             )     FILE NO. 2:18-cv-152-LGW-BWC
WAL-MART STORES EAST, LP,                     )
                                             )
          Defendant.                         )

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case, as listed below, in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing, as well as by electronic mail.

Bradley S. Robinson
Farah & Farah, P.A.
11102 Abercorn Street, Unit A
Savannah, Georgia 31419
brobinson@farahandfarah.com

H. Michael Dever
Hayes M. Dever
Friedman Dever & Merlin, LLC
5555 Glenridge Connector, NE
Suite 925, Glenridge Highlands
Atlanta, Georgia 30342
mdever@fdmlaw.com

Respectfully submitted this 8th day of May, 2020.

**DREW ECKL & FARNHAM, LLP**

*/s/ Elissa B. Haynes*
Elissa B. Haynes
Georgia Bar No. 804466

303 Peachtree Street, NE, Suite 3500
Atlanta, Georgia 30308

(404) 885-1400 Phone
(404) 876-0992 Fax
HaynesE@deflaw.com

*/s/ Garret W. Meader*
Garret W. Meader
Georgia Bar No. 142402
Carrie B. Coleman
Georgia Bar No. 602886

777 Gloucester Street, Suite 305
Brunswick, Georgia 31520
(912) 280-9662 Phone
gmeader@deflaw.com
ColemanC@deflaw.com

EXHIBIT A



CHEROKEE
FUNDING

# NOTICE OF
# ASSIGNMENT & LIEN

May 21, 2018

Bradley Robinson / Farah & Farah
777 Gloucester Street Suite 102
Brunswick, GA 31520

> RE: Misty Spears
> DOB: 1/22/1974
> DOA: 9/3/2017

To Whom It May Concern:

Please be informed that Cherokee Funding recently purchased the medical receivable(s) from OrthoOne in regards to your above captioned client.

For your convenience, please place this letter inside the client's file so that you may keep track of the Assignment & Lien. Upon the resolution of your client's legal claim, payment can be sent to Cherokee Funding at the following address.

> Cherokee Funding
> 4279 Roswell Road
> Suite 208-113
> Atlanta, GA 30342-3700
> Attn: Controller
> Fax Number: (404) 418-7827
> Tax ID # 27-4589219

We value your business and hope to continue to work with you in the future. Please feel free to call us with any future questions at (855) 394-2274.

Sincerely,

Brian Halter
Risk Manager
404-495-7400 x113
Cherokee Funding

4279 Roswell Road NE · Suite 208-113 · Atlanta GA 30342 · 855.394.CASH (2274) · 404.418.7827

EXHIBIT B



Lisa N. Higgins
(912) 280-9662
higginsl@deflaw.com

**October 30, 2019**

**Cherokee Funding, LLC**
**c/o Registered Agent Mr. Sheldon Friedman**

**4979 Roswell Rd**
**Suite 208-113**
**Atlanta, GA 30342**

**3424 Peachtree RD, NE**
**Suite C-100**
**Atlanta, GA 30326**

**5555 Glenridge Connector, NE**
**Suite 925**
**Atlanta, GA 30342**

> *Re:     Misty Spears v. Walmart Inc.*
> *USDC, Southern District of Georgia, Brunswick Division;*
> *CAFN:  SUCV2018000585*

**Name:** **Misty Spears**
**Date of Birth:** **01/22/74**

Dear Mr. Friedman:

Drew Eckl & Farnham, LLP represents **Wal-Mart Inc. Defendant** in the above-referenced civil action, which is presently pending in federal court.  In order to properly represent our client, we must obtain all records and information concerning a patient of **Touchton Surgery Center**, *Misty Spears.*

Enclosed herewith and served upon **Cherokee Funding, LLC** is a subpoena issued by the *United States District Court, Southern District of Georgia, Brunswick Division*, pursuant to Federal Rules of Civil Procedure 45(a)(1)(c).  Rule 45(a)(1)(c) authorizes the issuance of a subpoena to compel a non-party to produce evidence independent of a deposition. The documents that are being requested are specifically enumerated in Exhibit A, which is attached to the subpoena.

**Please sign the enclosed Certificate of Authentication of Records, attach the requested documents, and mail them directly to my attention.**  We will pay reasonable copy charges in connection with your fulfillment of the subpoena.  Please enclose your bill along with

the production.  If you require pre-payment, or if your charge for these records will exceed $100.00, **please advise us by faxing an invoice to my attention at (404) 876-0992 before producing the records.**

      <u>If you are unable to locate any of the requested records for this patient, please indicate such by written note on the Certificate of Authentication, then sign and notarize the certificate before returning it to my attention.</u>

Very truly yours,

DREW ECKL & FARNHAM, LLP

Lisa N. Higgins

LNH/ts
Enclosures
cc:    Bradley Robinson
        Farah & Farah, P.A.  (w/ enclosures)
        Garret W. Meader (w/o enclosures)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

Misty Spears

      Plaintiff,

v.

WAL-MART., Inc.

      Defendant.

CIVIL ACTION FILE
NO. 2:18-cv-152-LGW-BWC

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS

**TO:**  **Cherokee Funding, LLC**
      **c/o Registered Agent Mr. Sheldon Friedman**

      **4979 Roswell Rd**
      **Suite 208-113**
      **Atlanta, GA 30342**

      **3424 Peachtree RD, NE**
      **Suite C-100**
      **Atlanta, GA 30326**

      **5555 Glenridge Connector, NE**
      **Suite 925**
      **Atlanta, GA 30342**

☐    YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE  AND TIME |
|---|---|
| | |

☒     YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):   SEE Exhibit A

| PLACE<br>Drew Eckl & Farnham, LLP, 777 Gloucester St., Ste. 305, Brunswick, GA 31520<br><br>In lieu of appearance, you may mail or email the requested documents to:<br>**HigginsL@deflaw.com**<br>Drew Eckl & Farnham, LLP, 777 Gloucester St., Ste. 305, Brunswick, GA 31520<br>or fax to (404) 876-0992 | DATE AND TIME<br>**November 30, 2019**<br>10:00 a.m. |
|---|---|

☐     YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Defendant | DATE<br>10/30/2019 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
**Lisa N. Higgins**
Drew Eckl & Farnham, LLP, 777 Gloucester Street,  Suite 305 Brunswick, GA 31520
(912) 280-9662

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

PROOF OF SERVICE

      DATE          PLACE
      SERVED

**Cherokee Funding, LLC**
**c/o Registered Agent Mr. Sheldon Friedman**

**4979 Roswell Rd**
**Suite 208-113**
**Atlanta, GA 30342**

**3424 Peachtree RD, NE**
**Suite C-100**
**Atlanta, GA 30326**

**5555 Glenridge Connector, NE**
**Suite 925**
**Atlanta, GA 30342**

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| **Cherokee Funding, LLC** | Via FedEx Overnight Delivery and |
| | Via Hand Delivery / Personal Service |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| **Lisa N. Higgins** | Attorney for Defendant |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on: **October 30TH  2019**

SIGNATURE OF SERVER
Drew Eckl & Farnham, LLP, 777 Gloucester St., Suite 305, Brunswick, GA 31520
ADDRESS OF SERVER

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

EXHIBIT  A

The requested documents relating to:

**Patient: MISTY SPEARS; DOB: 01/22/74**

1.  All communications relating in any way to this case, <u>or</u> to this Plaintiff's medical or legal circumstances (regarding this or any other case), between any person affiliated with **Cherokee Funding, LLC**, and all of the following: (1) **Touchton Surgery Center**, (2) any member of Plaintiff's legal team (including staffers working for Plaintiff's <u>past</u> or <u>present</u> counsel of record).  The requested communications include all of the following:

    a.  All text messages;

    b.  All emails;

    c.  All visual voicemail recordings or internal notifications of pending voice messages ;

    d.  Any communications reflected in any practice management software;

    e.  All phone logs of calls or records of conversations; and

2.  All communications of any nature whatsoever about this case or this Plaintiff's medical or legal circumstances;

3.  All communications between your office or offices and any medical funding or litigation funding provider regarding this Plaintiff/patient, specifically including:

    a.  All contracts with  any affiliated entity;

    b.  All reports to any affiliated entity;

    c.  All applications for funding or requests that funding be provided to cover "overhead" regarding any treatment issued to this Plaintiff;

4. All communications between anyone in your office and any physician or medical practice group regarding this Plaintiff, specifically including all referral agreements and any commentary exchanged with any provider regarding Plaintiff's lawsuit;

5. All documents dealing with how the Plaintiff/patient was referred to **Touchton Surgery Center**, including any referral emails or web forms;

6. Any and all contracts, liens, assignments of rights, agreements to pay, or other legal instruments potentially giving **Touchton Surgery Center**, **Cherokee Funding, LLC**, or anyone affiliated with either entity a financial interest in the outcome of this litigation;

7. The <u>complete</u> contents of the Centricity EMR software, Carecloud software, PBO software, or other practice management software including the Patient Notes, Patient Alert Notes, and Notes from Billing Tab pages, as well as the following:

   a. All information contained in the following "tabs":

      1) Patient tab

      2) Guarantor tab

      3) Additional tab

      4) Insurance tab

      5) Contacts tab

      6) Appointments tab

      7) Financial tab

      8) Payment Plan tab

      9) Historical Data tab

      10) Registry tab

      b.   Audit Log Reports;

      c.   Billable Submissions;

8.   All marketing materials distributed to any member of Plaintiff's present or past legal team within the last three years by you or **Touchton Surgery Center**.

9.   All internal emails, chat room logs, text messages or other communications in any way related to the above-referenced Plaintiff/patient, her lawsuit, or her bills;

10. Any and all other documentation in your possession with regard to **MISTY SPEARS**.

PLEASE MAKE SURE THAT THE BACK PAGE OF EACH DOCUMENT WHICH HAS MATERIAL ON IT IS COPIED.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

Misty Spears

      Plaintiff,

v.

WAL-MART., Inc.

      Defendant.

CIVIL ACTION FILE
NO. 2:18-cv-152-LGW-BWC

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that I have this day, served a copy of the foregoing ***SUBPOENA***

***TO PRODUCE DOCUMENTS TO NON-PARTY* Cherokee Funding, LLC** properly addressed

and with adequate postage thereon to the following attorneys of record:

> Bradley Robinson
> Farah & Farah, P.A.
> 7 E Congress Street
> Suite 605
> Savannah, GA 31404

This 30th day of October, 2019.

**DREW ECKL & FARNHAM, LLP**

*/s/ Lisa Higgins*
Lisa N. Higgins
Georgia Bar No. 352020

777 Gloucester Street,
Suite 305
Brunswick, GA 31520
Telephone: (912) 280-9662
Facsimile: (404) 876-0992
E-mail: higginsL@deflaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

Misty Spears

      Plaintiff,

v.

WAL-MART., Inc.

      Defendant.

CIVIL ACTION FILE
NO. 2:18-cv-152-LGW-BWC

---

## CERTIFICATE OF AUTHENTICATION OF RECORDS
## PURSUANT TO FRE 803(6) AND 902(11)

THE UNDERSIGNED certifies that he or she is a person responsible for keeping the medical records for **Cherokee Funding, LLC** and that the attached records are true and accurate copies of the records of this entity concerning *Misty Spears*, and that said records were made in the regular course of business of said entity and that it was the regular course of such business to make such records at the time of the transactions, occurrences, or events recorded therein, or within a reasonable time thereafter.

THIS CERTIFICATE is given pursuant to Georgia laws and in compliance with F.R.C.P. Rule 45 and FRE 803(6) and 902(11) in lieu of the personal appearance of the person certifying hereto, and in connection with a case or proceeding involving *Misty Spears*.

THE UNDERSIGNED further certifies that said records with this certificate were delivered (pursuant to F.R.C.P. Rule 45 and FRE 803(6) and 902(11) to **Lisa N. Higgins** who is the counsel who sought production of these records.  It is further certified that no objection to this production has been served upon the undersigned by or on behalf of any other party involved in said lawsuit.

This ____ day of _____, 20_____.

Signed:_____
Custodian of Records for
**Cherokee Funding, LLC**

SWORN TO AND SUBSCRIBED
before me this _____ day of _____, 20____.
_____
Notary Public
My commission expires: _____

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cherokee Funding, LLC
c/o Sheldon Friedman
5555 Glenridge Connector NE
Suite 925
Atlanta GA 30342

9590 9402 5182 9122 7815 72

misty spears

2. Article Number (Transfer from service label)
7003 3110 0000 0318 822

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____
☐ Agent
☑ Addressee

B. Received by (Printed Name)
C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☑ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053          Domestic Return Receipt

EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | | |
|---|---|---|
| MISTY SPEARS, | : | |
| | : | |
| **Plaintiff,** | : | CIVIL ACTION |
| | : | FILE NO. 2:18-CV-152-LGW-BWC |
| v. | : | |
| | : | |
| WAL-MART, INC., | : | |
| | : | |
| **Defendant.** | : | |
| _____ | : | |

## NON-PARTY CHEROKEE FUNDING, LLC'S RESPONSE AND OBJECTIONS TO DEFENDANT'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS

COMES NOW Cherokee Funding, LLC ("Cherokee"), a Non-Party in the above-styled action, and hereby responds and objects to *Defendant's Subpoena to Produce Documents, Information, or Objects.*

## REQUEST FOR PRODUCTION

1. All communications relating in any way to this case, or to this Plaintiff's medical or legal circumstances (regarding this or any other case), between any person affiliated with Cherokee Funding, LLC, and all of the following: (1) Touchton Surgery Center, (2) any member of Plaintiff's legal team (including staffers working for Plaintiff's past or present counsel of record). The requested communications include all of the following:

    a.  All text messages;

1

b.  All emails;

c.  All visual voicemail recordings or internal notifications of pending

voice messages;

d.  Any communications reflected in any practice management

software;

e.  All phone logs of calls or records of conversations; and

**RESPONSE:**     See objections.

2.  All communications of any nature whatsoever about this case or this

Plaintiff's medical or legal circumstances;

**RESPONSE:**     To the extent such documents exist, they will be produced.

3.  All communications between your office or offices and any medical funding

or litigation funding provider regarding this Plaintiff/patient, specifically

including:

a.  All contracts with any affiliated entity;

b.  All reports to any affiliated entity;

c.  All applications for funding or requests that funding be provided to

cover "overhead" regarding any treatment issued to this Plaintiff;

**RESPONSE:**     No such documents exist.

4.  All communications between anyone in your office and any physician or

medical practice group regarding this Plaintiff, specifically including all

referral agreements and any commentary exchanged with any provider regarding Plaintiff's lawsuit;

**RESPONSE:**      To the extent such documents exist, they will be produced.

5. All documents dealing with how the Plaintiff/patient was referred to Touchton Surgery Center, including any referral emails or web forms;

**RESPONSE:**      To the extent such documents exist, they will be produced.

6. Any and all contracts, liens, assignments of rights, agreements to pay, or other legal instruments potentially giving Touchton Surgery Center, Cherokee Funding, LLC, or anyone affiliated with either entity a financial interest in the outcome of this litigation;

**RESPONSE:**      See objections.

7. The complete contents of the Centricity EMR software, Carecloud software, PBO software, or other practice management software including the Patient Notes, Patient Alert Notes, and Notes from Billing Tab pages, as well as the following:

a. All information contained in the following "tabs":

1) Patient tab

2) Guarantor tab

3) Additional tab

4) Insurance tab

    5) Contacts tab

    6) Appointments tab

    7) Financial tab

    8) Payment Plan tab

    9) Historical Data tab

    10)   Registry tab

  b. Audit Log Reports;

  c. Billable Submissions;

**RESPONSE:**    No such documents exist.

8. All marketing materials distributed to any member of Plaintiffs present or past legal team within the last three years by you or Touchton Surgery Center.

**RESPONSE:**    To the extent such documents exist, they will be produced.

9. All internal emails, chat room logs, text messages or other communications in any way related to the above-referenced Plaintiff/patient, her lawsuit, or her bills;

**RESPONSE:**    No such documents exist.

10. Any and all other documentation in your possession with regard to MISTY SPEARS.

**RESPONSE:**    See objections.

## RESPONSE AND OBJECTIONS

Without admitting or denying the existence of any litigation funding or other agreement related to this case, Non-Party Cherokee objects to these requests as oppressive, unreasonable, unduly burdensome or expensive, harassing, harsh, insulting, annoying, embarrassing, incriminating, or directed to wholly irrelevant and immaterial or privileged matters, or otherwise exceed the scope of permissible discovery in Georgia. *See* Sechler Family P'ship v. Prime Grp., Inc., 255 Ga. App. 854, 567 S.E.2d 24 (2002) (holding that trial court has discretion to protect non-parties from such requests). The requested documents also are not relevant, proportional to the needs of the case, or calculated to lead to the discovery of admissible evidence. O.C.G.A. § 9-11-26(b)(1); Fed. R. Civ. P. 26(b)(1). Moreover, the requests seek to unnecessarily pry into the Plaintiff's finances in violation of their right to financial privacy and without making a general relevance showing to this Court. Bd. of Regents of Univ. Sys. of Georgia v. Ambati, 299 Ga. App. 804, 685 S.E.2d 719 (2009); S. Outdoor Promotions, Inc. v. Nat'l Banner Co., 215 Ga. App. 133, 135, 449 S.E.2d 684, 687 (1994); Borenstein v. Blumenfeld, 151 Ga. App. 420, 260 S.E.2d 377 (1979).

Cherokee further objects that the documents requested are not discoverable under the work-product doctrine, the attorney-client privilege, and the common defense doctrine. *See, e.g.,* Doe v. Soc'y of Missionaries of Sacred Heart, No. 11-

CV-02518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) (litigation funding documents were protected work product in negligent supervision / personal injury cause of action arising out of sexual abuse); Miller UK Ltd. v. Caterpillar, Inc., 17 F. Supp. 3d 711, 726-27 (N.D. Ill. 2014) (concluding, after a thorough analysis, that documents plaintiffs shared with funder were protected work product); Walker Digital, LLC v. Google, Inc., No. CV 11-309-SLR, 2013 WL 9600775, at *1 (D. Del. Feb. 12, 2013) (common interest doctrine, work-product doctrine, and attorney-client privilege protected communications between litigant and "patent monetization consultant"); Devon It, Inc. v. IBM Corp., No. CIV.A. 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012) (documents shared with "an outside consultant staffed by attorneys who evaluate a case to determine the feasibility of advancing financing to a party pursuing a claim which is expensive to litigate" not discoverable when protected by common interest and nondisclosure agreement); Mondis Tech., Ltd. v. LG Electronics, Inc., No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) ("[D]ocuments . . . prepared . . . with the intention of coordinating potential investors to aid in future possible litigation . . . [we]re protected by the work product protection. Furthermore, although these documents were disclosed to third parties, the disclosures do not create a waiver because they were disclosed subject to non-disclosure agreements and thus did not substantially increase the likelihood that an adversary would come into possession

of the materials."); United States v. Homeward Residential, Inc., 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) ("The Court finds that the litigation funding information is protected by the work product doctrine…Additionally, the Court finds that the protected information was not waived by disclosure to the possible or actual litigation funders. Litigation funders have an inherent interest in maintaining the confidentiality of potential clients' information, therefore, [the disclosing party] had an expectation that the information disclosed to the litigation funders would be treated as confidential."); Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A., No. CV 7841-VCP, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015) ("The negotiations between those two parties almost certainly would involve the "lawyers' mental impressions, theories and strategies about" the case, which "were only prepared 'because of' the litigation." Similarly, the terms of the final agreement—such as the financing premium or acceptable settlement conditions—could reflect an analysis of the merits of the case."); Charge Injection Techs., Inc. v. E.I. DuPont De Nemours & Co., CV 07C-12-134-JRJ, 2015 WL 1540520, at *5 (Del. Super. Ct. Mar. 31, 2015) (finding documents prepared for litigation funder was opinion work product); see also Michele DeStefano, CLAIM FUNDERS AND COMMERCIAL CLAIM HOLDERS: A COMMON INTEREST OR A COMMON PROBLEM?, 63 DePaul L. Rev. 305, 372 (2014) (explaining the importance of allowing privilege to be preserved

in litigation funding agreements and "recommend[ing] that courts interpret the common-interest exception to apply to the relationship between claim funders and claim holders.").

Cherokee further objects to producing the requested documents on the ground that the material requested is irrelevant and inadmissible evidence of a collateral source under Georgia law. *See* MCG Health, Inc. v. Kight, 325 Ga. App. 349, 352, 750 S.E.2d 813, 817 (2013), *reconsideration denied* (Dec. 10, 2013), *cert. granted* (July 29, 2014), *aff'd on other grounds*, 296 Ga. 687, 769 S.E.2d 923 (2015) (plaintiff entitled to recover amount billed by medical providers; amounts paid by insurer inadmissible collateral source); Allen v. Spiker, 301 Ga. App. 893, 896, 689 S.E.2d 326, 329 (2009) (plaintiff entitled to recover amount of reasonable and necessary medical expenses arising from accident); Vol Repairs II Inc. v. Knighten, 322 Ga. App. 416, 420, 745 S.E.2d 673, 677 (2013) ("the collateral-source rule bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit toward the defendant's liability and damages for such payments") (*quoting* Harper v. Barge Air Conditioning, Inc., 313 Ga. App. 474, 722 S.E.2d 84 (2011)).

Cherokee further objects that the materials requested constitute, contain, or reveal proprietary and confidential business information and trade secrets belonging to Cherokee that are not subject to discovery, or for which the burden

and cost of production on Cherokee substantially outweighs any potential relevance to the litigation. *See* O.C.G.A. § 9-11-26(c)(7); Fed. R. Civ. P. 26(b)(2)(C)(iii). "A broad discretionary power is given to the trial court under the discovery provisions of the Civil Practice Act to assure safeguards against oppressive and unfair questions and demands." Gibson v. Talley, 156 Ga. App. 593, 595, 275 S.E.2d 154, 156 (1980). *See also* Anderburg v. Georgia Electric. Membership Corp., 175 Ga. App. 14, 16, 332 S.E.2d 326, 328 (1985) (clarifying trial court's broad discretion to take action which justice requires to protect a party from annoyance or oppressive discovery requests). Cherokee's business strategy and market advantage derive from confidential relationships with both (1) the parties for which it provides funding and (2) service providers to which Cherokee makes payments. Specific details of Cherokee's funding arrangements constitute trade secrets protected under the Georgia Trade Secrets Act of 1990. In particular, and without limitation, the following aspects of the requested documents constitute confidential and trade secret information belonging to Cherokee:

1) the parties to whom Cherokee extends funding,
2) the terms on which it extends funding,
3) the vendors and other service providers who provide products and services to litigants under contracts or agreements with Cherokee, and
4) the terms of such contracts between Cherokee and such service providers. This information is, potentially reveals, or includes:

> [T]echnical [and] nontechnical data, . . . pattern[s], . . . compilation[s], . . . program[s], . . . device[s], . . . method[s], . . . technique[s], . . . process[es], financial data, financial plans, product plans, . . . list[s] of actual or potential customers or

suppliers which [are] not commonly known by or available to the public and which information:

    (A)    derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

    (B)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10-1-761 (defining "trade secret"). As such, the information requested constitutes, contains, or reveals proprietary, and confidential business information, trade secrets, and contracts which typically apply the law of the State of Georgia, that Cherokee must take appropriate measures to protect. Cherokee will not reveal this information except under court order containing appropriate provisions to maintain the confidentiality and any dissemination of the material.

In addition, Cherokee objects to the extent that the materials requested are protected under the Health Insurance Portability and Accountability Act ("HIPAA"). If a Court orders production over these objections, no materials concerning medical expenses will be produced until all prerequisites under 45 C.F.R. 164.512 are satisfied.

Finally, nothing in the foregoing objections should be construed to waive any objection to the admissibility of the requested material or as a concession or admission that the requested material is either relevant or admissible. To the

contrary, Cherokee expressly reserves the right to object to the use or admissibility

at trial or otherwise of all material requested.

Respectfully submitted,
FRIEDMAN, DEVER & MERLIN, LLC

By:_____

H. Michael Dever
Georgia Bar No. 219785
mdever@fdmlaw.com
Hayes M. Dever, Jr.
Georgia Bar No. 338488
hdever@fdmlaw.com

5555 Glenridge Connector, NE          Attorneys for Non-Party
Suite 925, Glenridge Highlands         Cherokee Funding, LLC
Atlanta, GA 30342-4728
(404) 236-8600

## FONT CERTIFICATION

In compliance with Local Rule 7.1(D), counsel for Cherokee Funding, LLC certifies that this filing was prepared using a font and point selection approved by the Court in Local Rule 5.1(B), Times New Roman 14.

Respectfully submitted,
FRIEDMAN, DEVER & MERLIN, LLC

By: _____
H. Michael Dever
Georgia Bar No. 219785
mdever@fdmlaw.com
Hayes M. Dever, Jr.
Georgia Bar No. 338488
hdever@fdmlaw.com

5555 Glenridge Connector, NE        Attorneys for Non-Party
Suite 925, Glenridge Highlands      Cherokee Funding, LLC
Atlanta, GA 30342-4728
(404) 236-8600

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

MISTY SPEARS,                        :
                                     :
        Plaintiff,                   :        CIVIL ACTION
                                     :        FILE NO. 2:18-CV-152-LGW-BWC
v.                                   :
                                     :
WAL-MART, INC.,                      :
                                     :
        Defendant.                   :
_____:

## CERTIFICATE OF SERVICE

I hereby certify that, on November 13, 2019, the undersigned electronically

filed the **NON-PARTY CHEROKEE FUNDING, LLC'S RESPONSE AND**

**OBJECTIONS   TO   DEFENDANT'S   SUBPOENA   TO   PRODUCE**

**DOCUMENTS, INFORMATION, OR OBJECTS** by depositing a copy in the

United States Mail, with sufficient first class postage affixed thereon, addressed as

follows:

Lisa N. Higgins, Esq.
Drew Eckl & Farnham LLP
777 Gloucester Street, Suite 305
Brunswick, GA 31520

Bradley Robinson, Esq.
Farah & Farah, P.A.
11102 Abercorn Street, Unit A
Savannah, Georgia 31419

13

This the 13th day of November, 2019.

Respectfully submitted,
FRIEDMAN, DEVER & MERLIN, LLC

By: _____
H. Michael Dever
Georgia Bar No. 219785
mdever@fdmlaw.com
Hayes M. Dever, Jr.
Georgia Bar No. 338488
hdever@fdmlaw.com

5555 Glenridge Connector, NE          Attorneys for Non-Party
Suite 925, Glenridge Highlands         Cherokee Funding, LLC
Atlanta, GA 30342-4728
(404) 236-8600

14



 **FRIEDMAN, DEVER & MERLIN, LLC**
ATTORNEYS AT LAW
5555 GLENRIDGE CONNECTOR, NE
SUITE 925, GLENRIDGE HIGHLANDS
ATLANTA, GEORGIA 30342-4728

TO:

Lisa N. Higgins, Esq.
Drew Eckl & Farnham LLP
777 Gloucester Street, Suite 305
Brunswick, GA 31520

EXHIBIT D



Garret W. Meader
(912) 280-9662
meaderg@deflaw.com

December 5, 2019

**Via FedEx**
H. Michael Dever, Esq.
Hayes M. Dever, Esq.
Friedman, Dever & Merlin, LLC
5555 Glenridge Connector, N.E.
Suite 925
Atlanta, GA 30342

> Re:   Misty Spears v. Wal-Mart Stores East, LP;
>       U.S.D.C. for the Southern District of Georgia; Brunswick Division;
>       CAFN: 2:18-cv-152-LGW-BWC.

Dear Messrs. Dever:

We represent Wal-Mart Stores East, LP in the above-referenced matter.  On October 30, 2019, Defendants served Cherokee Funding ("Cherokee") with a Request for Production of Documents pursuant to Fed. R. Civ. P. 45(a)(1)(c).  On November 13, 2019, you served a Response and Objection to Defendant's Request in which you advised Cherokee would produce documents responsive to request no. 5.  Cherokee asserted blanket objections to all remaining requests.

To date, Cherokee has not produced any documents whatsoever.  Further, Cherokee's blanket objections to Defendant's requests are unfounded.  Defendants' requests do not seek documents protected by any recognized privilege, and are reasonably tailored to the discovery of admissible evidence.

Accordingly, this letter serves as Defendant's good-faith effort to resolve a discovery dispute pursuant to Fed. R. Civ. P. 37.  If we do not receive full, complete, good faith responses to the requests within ten (10) days of this letter, we will have no choice but to file a motion to compel and reserve the right to seek sanctions and fees for the associated costs of doing so.  Please contact us if you have any questions.

Sincerely,

**DREW, ECKL & FARNHAM, LLP**

Garret W. Meader



**EXHIBIT E**

FRIEDMAN,
DEVER &
MERLIN, LLC

ATTORNEYS AT LAW

5555 GLENRIDGE CONNECTOR, NE
SUITE 925, GLENRIDGE HIGHLANDS
ATLANTA, GEORGIA 30342-4728
TELEPHONE 404.236.8600
TELECOPIER 404.236.8601

direct dial:  404 236 8614
email: mdever@fdmlaw.com

December 16, 2019

**VIA EMAIL & REGULAR MAIL**
Garret W. Meader, Esq.
Drew Eckl & Farnham, LLP
777 Glouchester Street
Suite 305
Brunswick, GA 31520
meaderg@deflaw.com

Re:   **Misty Spears v. Wal-Mart Stores East, LP**
United States District Court Southern District of Georgia
Civil Action File No. 2:18-CV-182-LGW-BWC
FD&M File No. 2254.71180

Dear Mr. Meader:

This law firm serves as counsel for Cherokee Funding, LLC.  I am in receipt of your letter dated December 5, 2019. I would like to address the issues raised therein.

First, as Cherokee did not refer Ms. Spears to Touchton, there are no documents in Cherokee's possession, custody, or control responsive to Request No. 5

Second, Cherokee disputes the discoverability of information and/or documents responsive to the Requests to which Cherokee has objected.  As to Request No. 1, we are unaware of any binding authority holding that communications between a medical funding provider and a Plaintiff's attorney or any healthcare providers are relevant or discoverable. We must also dispute the relevance of Cherokee's financial interest in the case and thus the discoverability of documents sought in Request No. 6. We are unaware of any case law finding that the financial interest of a medical funding provider is relevant or discoverable and it is our understanding that Touchton Surgery Center has no financial interest in the outcome of this matter. As to Request No. 10, this blanket request for any other documentation in Cherokee's possession again seeks information without regard to its discoverability or relevance and no authority has been cited supporting such a general requests for the client records of a medical funding company. Cherokee is a provider of collateral source benefits and, as such, evidence of its business with its clients is evidence of collateral source benefit and thus generally immaterial and inadmissible. Without any further explanation as to how you believe this information is admissible, relevant, or calculated to lead to the discovery of admissible evidence, Cherokee must maintain its objections on those grounds.

*Garret W. Meader, Esq.*
*December 16, 2019*
*Page 2 of 2*

For these reasons and without waiving any previously stated objections, Cherokee must maintain its objections to the Subpoena at this time.

Please feel free to contact me should you have any further questions.

Very truly yours,

H. Michael Dever

HMD:hd
cc:     Cherokee Funding, LLC



EXHIBIT F



DREW | ECKL
FARNHAM
ATTORNEYS AT LAW

Carrie Coleman
(912) 280-9662
colemanc@deflaw.com

Garret W. Meader
(912) 280-9662
meaderg@deflaw.com

January 16, 2020

*Via FedEx*
H. Michael Dever, Esq.
Hayes M. Dever, Esq.
Friedman, Dever & Merlin, LLC
5555 Glenridge Connector, N.E.
Suite 925
Atlanta, GA 30342

      Re:    Misty Spears v. Wal-Mart Stores East, LP;
               U.S.D.C. for the Southern District of Georgia; Brunswick Division;
               CAFN: 2:18-cv-152-LGW-BWC.

Dear Messrs. Dever:

      We represent Wal-Mart Stores East, LP in the above-referenced matter. On October 30, 2019, Defendants served Cherokee Funding ("Cherokee") with a Request for Production of Documents pursuant to Fed. R. Civ. P. 45(a)(1)(c). On November 13, 2019, you served a Response and Objection to Defendant's Request in which you advised Cherokee would produce documents responsive to Requests 2, 4, 5, and 8. Cherokee either asserted blanket objections or asserted that no such documents exist to all remaining Requests. On December 5, 2019, our firm again reached out to you requesting responses to our Requests. You asserted that no responsive documents exist with regard to Request no. 5, and re-asserted your objections to Requests 1, 6 and 10.

      To date, Cherokee has not produced any documents whatsoever. Further, Cherokee's blanket objections to Defendant's requests are insufficient and unfounded. Defendants' requests do not seek documents protected by any recognized privilege and are reasonably tailored to the discovery of admissible evidence. Rule 26 allows for discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...Information within the scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

      Defendant's seek the requested documents in order to accurately assess the claimed cost of medical treatment provided to the Plaintiff, and to allow for a meaningful assessment of the reasonableness of those costs. Discovery of such information not precluded by the collateral source rule as it may be relevant to the reasonable rates of medical services. The collateral source rule applies at trial to bar the presentation of evidence concerning the Plaintiff's receipt of benefits to diminish the Plaintiff's recovery of damages. *Bowden v. The Med. Ctr., Inc.,* 297 Ga. 285, 773 S.E.2d 692, 697 (2015). Any objection to such evidence on the grounds of admissibility at trial is, at this point, premature.

Accordingly, this letter serves as Defendant's good-faith effort to resolve a discovery dispute pursuant to Fed. R. Civ. P. 37. If we do not receive full, complete, good faith responses to the requests within five (5) days of this letter, we will have no choice but to file a motion to compel and reserve the right to seek sanctions and fees for the associated costs of doing so. Please contact us if you have any questions.

If you maintain your previous objections to the Requests, please produce a privilege log which satisfies the requirements of Federal Rules of Civil Procedure 26 and 34. For each document withheld please indicate: (1) which Request the withheld document is responsive to, (2) the authors of each document and their capacities, (3) the recipients of each document (including copy recipients) and their capacities, (4) the subject matter of the withheld document, and (5) a detailed description of the privilege you contend applies and sufficient information to verify the privilege asserted. *Rauback v. City of Savannah*, 11th Cir. S.D.Ga., 2019 WL 3755673.

Sincerely,

**DREW, ECKL & FARNHAM, LLP**

Carrie B. Coleman



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.



FRIEDMAN,
DEVER &
MERLIN, LLC
ATTORNEYS AT LAW

5555 GLENRIDGE CONNECTOR, NE
SUITE 925, GLENRIDGE HIGHLANDS
ATLANTA, GEORGIA 30342-4728
TELEPHONE 404.236.8600
TELECOPIER 404.236.8601

direct dial: 404 236 8614
email: mdever@fdmlaw.com

January 21, 2020

**VIA EMAIL & REGULAR MAIL**
Carrie B. Coleman, Esq.
Garret W. Meader, Esq.
Drew Eckl & Farnham, LLP
777 Glouchester Street
Suite 305
Brunswick, GA 31520
meaderg@deflaw.com

Re:   **Misty Spears v. Wal-Mart Stores East, LP**
United States District Court Southern District of Georgia
Civil Action File No. 2:18-CV-182-LGW-BWC
FD&M File No. 2254.71180

Dear Ms. Coleman:

This law firm serves as counsel for Cherokee Funding, LLC. I am in receipt of your letter dated January 16, 2020. I would like to address the issues raised therein.

In your January 16, 2020 letter you mention that Cherokee has agreed to produce documents responsive to Requests Nos. 2, 4, 5, and 8 to the extent they exist. Please be aware that no documents responsive to Request Nos. 5 or 8 exist. As for documents responsive to Requests No. 2 and 4, documents responsive to these requests will be produced by Friday, January 24, 2020.

As to the remaining requests, Cherokee must maintain the objections raised in its response to the October 30th Subpoena. Specifically, Cherokee continues to dispute the relevance and ultimate discoverability of documents responsive to the remaining requests. Cherokee is a provider of collateral source benefits and evidence of these benefits are generally immaterial and inadmissible. Moreover, the requested documents are not relevant for the purposes stated in your January 16th letter and do not appear to be reasonably calculated to lead to the discovery of relevant, useful evidence.

Cherokee Funding is not a healthcare provider but a provider of medical funding. As such, Cherokee has no role in the billing of a client for medical services received by that client. The true cost of Ms. Spear's medical treatment and the reasonableness of those costs cannot be assessed by a review of any documents in Cherokee's possession. These assessments can only be made through

*Carrie B. Coleman, Esq.*
*January 21, 2020*
*Page 2 of 2*

discovery of the records of Ms. Spear's healthcare providers as they administered, and billed for, the treatments for which Ms. Spear's seeks compensation. The reasonableness of these costs likewise may be determined by discovery of records in the healthcare provider's possession, such as records of rates charged to Ms. Spears and to other patients for the same procedure. But the reasonableness of these costs cannot be determined through review of any records in Cherokee's possession as Cherokee has no control over what Ms. Spear's healthcare providers bill and no records which can speak to the reasonableness of those bills.

For these reasons and without waiving any previously stated objections, Cherokee must maintain its objections to the Subpoena at this time.

Please feel free to contact me should you have any further questions.

Very truly yours,

H. Michael Dever

HMD:hd
cc:     Cherokee Funding, LLC

UNITED STATES POSTAGE

PITNEY BOWES

02 1P    $ 000.500
0001969653  JAN 21 2020
MAILED FROM ZIP CODE 30342

PM METRO
GA 301
21 JAN 20
PM 5 L

FRIEDMAN,
DEVER &
MERLIN, LLC
ATTORNEYS AT LAW

Carrie B. Coleman, Esq.
Garret W. Meader, Esq.
Drew Eckl & Farnham, LLP
777 Glouchester Street
Suite 305
Brunswick, GA 31520

04/23

5555 GLENRIDGE CONNECTOR, NE • SUITE 925, GLENRIDGE HIGHLANDS



About Cherokee | A Legal Funding Medical Funding Company

 


HOME    **ABOUT US**    SERVICES    PLAINTIFFS    ATTORNEYS    HEALTHCARE PROVIDERS    BLOG

🔍 Apply Now

# About Cherokee Funding

*We Welcome You.*

Cherokee Funding is a full-service direct funding company, headquartered in Atlanta, GA. Cherokee was founded in 2011 at the urging of several doctors and plaintiffs attorneys who wanted a better, completely reputable, option for their clients. The idea was simple – help plaintiffs by providing them funds to pay for their life needs so they can afford to wait for a fair settlement – and do it with 100% transparency, at the lowest cost and with great customer service.

From day one, our goal has been to enable the best outcome for plaintiffs by providing them with legal funding at the lowest cost possible. Since then, we have expanded our offerings to include financing options for law firms and medical practices.

With over 100 years of combined industry experience, our team prides itself on providing the best customer service and having the best reputation in the industry. Contact

**Cherokee Funding today for more information about our litigation funding services.**



Based on **274 reviews**

# Direct Funding Company

# Serving Plaintiffs, Attorneys & Doctors

## Our Values

- We are a team
- We help those in need
- No finger pointing allowed

- We are transparent
- We go the extra mile for
  our customers

## Meet The Team

Case 2:18-cv-00152-LGW-BWC   Document 36   Filed 05/08/20   Page 58 of 69









Cherokee Funding offers the best possible combination - funding solutions to meet almost any need plus the best reputation in the industry.

## RECENT BLOG



What Personal Injury Lawyers Can Do Now to Prepare for the COVID-19 Case Settlement Delays

*Date: 20 Apr 2020 / Author: Reid Zeising*



'My Personal Injury Case Is Being Put on Hold': How the Coronavirus Is Affecting Plaintiffs

## CONTACT INFO

📞 855-394-2274

📠 404-418-7827

✉️ info@Cherokeefunding.com

🕐 Open 8 am – 8 pm

  

## MAIN MENU

Home

About

Services

Process

Attorneys

State Licenses

Contact Us



**BBB Rating: A+**
As of 04/23/20
Click for Profile

*Date: 31 Mar 2020 / Author:*

*Reid Zeising*



COVID-19: Medical Practices Stand to Lose a Lot of Revenue, Medical Funding to Provide Relief

*Date: 27 Mar 2020 / Author:*

*Reid Zeising*

---

Terms & Conditions   |   Privacy   |   Sitemap

Copyright © 2020 Cherokee Funding, All Rights Reserved.

*Same Day Funding applies to cash advances up to $2,500 against motor vehicle accident cases for applicants that submit a complete application. Cherokee must have your completed application by 2:00 PM EST and both yours and your attorney's signed contract back by 4:00 PM EST. Cash advances for all other case types are funded within 24 hours of receipt of the completed application, if not the same day.





HOME　ABOUT US　SERVICES　PLAINTIFFS　ATTORNEYS　HEALTHCARE PROVIDERS　BLOG

🔍 Apply Now

# Medical Funding Frequently Asked Questions

## What is Medical Funding?

Medical Funding is a service that allows people who have had personal injury to get the medical treatment that they need even if they are uninsured, underinsured or have a high deductible.

## How does Cherokee's Medical Funding work?

Clients get treated by healthcare providers in Cherokee's network. Cherokee pays the healthcare provider for the patient's medical treatment. Cherokee gets paid back from the proceeds of the patient's personal injury settlement.

## Why use Medical Funding?

Medical Funding services are a great option for people hesitant to get the medical treatment they need due lack of insurance, being underinsured or having high deductible.



HOME    ABOUT US    **SERVICES**    PLAINTIFFS    ATTORNEYS    HEALTHCARE PROVIDERS    BLOG

Apply Now

## How does much does it cost?

There are no out of pocket expenses to the patient, no upfront fees or interest.

## How does Cherokee make money?

Cherokee pays the healthcare provider an amount less than invoice. Cherokee collects the invoice amount from the client's settlement. Healthcare providers like it because they are paid quickly.

## Medical Treatment Funding is Non-Recourse

Non-recourse means that Cherokee's Medical Fundings are not loans. Rather, Cherokee pays healthcare providers for your medical treatment and gets paid back from your settlement only if you win a settlement. If your case is lost, no repayment is required.

## What are your interest rates for

There are none – we provide the you or your attorney the invoice from the provider. Cherokee gets paid the exact medical bill with no additional charges or interest.



HOME    ABOUT US    **SERVICES**    PLAINTIFFS    ATTORNEYS    **HEALTHCARE PROVIDERS**    BLOG

Apply Now

to answer your questions. We will review your case with you and your attorney. Contact us today to find out more about how we can help you.

# Additional Resources On Our Website:

- Cherokee Funding blog: "Questions to Ask About Medical Funding"
- For details about our services in Litigation Funding and Medical Funding



Cherokee Funding offers the best possible combination - funding solutions to meet almost any need plus the best reputation in the industry.

## RECENT BLOG



What Personal Injury Lawyers Can Do Now to Prepare for the COVID-19 Case Settlement Delays

*Date: 20 Apr 2020 / Author: Reid Zeising*



'My Personal Injury Case Is Being Put on Hold': How the Coronavirus Is Affecting Plaintiffs

*Date: 31 Mar 2020 / Author: Reid Zeising*

## CONTACT INFO

📞 855-394-2274

🖨 404-418-7827

✉ info@Cherokeefunding.com

🕐 Open 8 am – 8 pm



## MAIN MENU

Home

About

Services

Process

Attorneys

State Licenses

Contact Us



ACCREDITED BUSINESS

BBB Rating: A+
As of 04/23/20
Click for Profile



HOME    ABOUT US    SERVICES    PLAINTIFFS    ATTORNEYS    HEALTHCARE PROVIDERS    BLOG

🔍    Apply Now

Terms & Conditions    |    Privacy    |    Sitemap

Copyright © 2020 Cherokee Funding, All Rights Reserved.

*Same Day Funding applies to cash advances up to $2,500 against motor vehicle accident cases for applicants that submit a complete application. Cherokee must have your completed application by 2:00 PM EST and both yours and your attorney's signed contract back by 4:00 PM EST. Cash advances for all other case types are funded within 24 hours of receipt of the completed application, if not the same day.

Medical Procurement Services | Medical Liens | Cherokee Funding



EXHIBIT J



# *Doctors*

*Give your patients the treatment they deserve*

Cherokee Funding is the healthcare industry's trusted leader for purchasing and servicing of medical liens.

With more half of all medical liens taking over 18 months to resolve, healthcare providers know the financial challenges of treating personal injury patients all too well.

Cherokee offers a two part financial solution to healthcare practices:

1. Purchases existing medical liens,
2. Payment at time of treatment for all new personal injury patients so providers no longer need hold liens.

Cherokees' approach ensures medical providers are paid upfront and patients receive the medical care they need.



HOME    ABOUT US    SERVICES    PLAINTIFFS    ATTORNEYS    HEALTHCARE PROVIDERS    BLOG

Apply Now

win/loss rates and reduction requests from thousands and thousands of personal injury cases to precisely underwrite and price the receivables.

**Cherokee's Medical Lien Purchase program helps healthcare providers in several ways:**

### Frees Up Time for Your Office Personnel

Cherokee's Lien Purchase program frees up time for office personnel to schedule more patients and to focus on processing more insurance claims faster. Your office staff will no longer have track down patients who have switched attorneys, get case updates or deal with demand packages.

### Eliminates the risk of non-payment

With Cherokee, doctors no longer need to accept a Letter of Protection or lien on legal settlement proceeds as payment for their services. And, they no longer deal with reductions or write-offs.

### Improves Cash Flow

Cherokee pays healthcare providers on behalf of the patient so they have immediate payment and no longer need to hold liens or increase their accounts receivable.

### Receive Client Referrals

Cherokee works with thousands of attorneys who often have clients in need of a provider to get the care they need. We craft a joint marketing effort with our attorney base to increase the referrals to your site.

Medical Funding Services | Medical Liens | Cherokee Funding



HOME   ABOUT US   SERVICES   PLAINTIFFS   ATTORNEYS   **HEALTHCARE PROVIDERS**   BLOG

Apply Now

## your existing medical liens?

Request a Free Quote for Your Medical Lien Portfolio

REQUEST QUOTE



Cherokee Funding offers the best possible combination - funding solutions to meet almost any need plus the best reputation in the industry.

**RECENT BLOG**



What Personal Injury Lawyers Can Do Now to Prepare for the COVID-19 Case Settlement Delays

*Date: 20 Apr 2020 / Author: Reid Zeising*



'My Personal Injury Case Is Being Put on Hold': How the Coronavirus Is Affecting Plaintiffs

*Date: 31 Mar 2020 / Author: Reid Zeising*

COVID-19: Medical Practices Stand to Lose a

**CONTACT INFO**

📞 855-394-2274

📠 404-418-7827

✉️ info@Cherokeefunding.com

🕐 Open 8 am – 8 pm

**MAIN MENU**

Home

About

Services

Process

Attorneys

State Licenses

Contact Us





HOME    ABOUT US    SERVICES    PLAINTIFFS    ATTORNEYS    HEALTHCARE PROVIDERS    BLOG

Apply Now

Terms & Conditions   |   Privacy   |   Sitemap

Copyright © 2020 Cherokee Funding, All Rights Reserved.

*Same Day Funding applies to cash advances up to $2,500 against motor vehicle accident cases for applicants that submit a complete application. Cherokee must have your completed application by 2:00 PM EST and both yours and your attorney's signed contract back by 4:00 PM EST. Cash advances for all other case types are funded within 24 hours of receipt of the completed application, if not the same day.