IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MISTY SPEARS, | |
| Plaintiff, | CIVIL ACTION NO.: 2:18-cv-152 |
| v. | |
| WAL-MART STORES EAST, LP, | |
| Defendant. | |

**O R D E R**

This matter is before the Court on: Defendant's Amended Objection to Non-Party Cherokee Funding, LLC's Confidentiality Designations and Motion to Remove Same, doc. 57; Motion to Quash Defendant's Amended Notice to Take the Videotaped 30(b)(6) Deposition of Cherokee Funding, LLC Representative(s), doc. 62; and Joint Motion for Extension of Time to Complete Discovery, doc. 65.  The Court conducted a hearing in this matter on February 1, 2021, and issued certain rulings during that proceeding.  This Order memorializes those rulings.

As explained during the February 1, 2021 hearing, and for the reasons set forth below, the Court **OVERRULES** and **DENIES** Defendant's Amended Objection and Motion, doc. 57; **DENIES as moot** Cherokee Funding, LLC's Motion to Quash, doc. 62; **DENIES** Defendant's Motion for Sanctions, doc. 64; and **GRANTS in part** the parties' motion to extend discovery, doc. 65.  Because Defendant subsequently filed an Amended Objection and Motion, the Court **DENIES as moot** Defendant's first Objection and Motion regarding confidentiality designations.  Doc. 56.

## BACKGROUND

Plaintiff filed suit in the Superior Court of Camden County, Georgia, alleging she slipped and fell on an unknown, clear substance in Defendant's store located in Camden County. Doc. 1-1 at 5.  Defendant removed the case to this Court on the basis of diversity jurisdiction. Doc. 1.  The Court has issued seven Scheduling Orders in this case, with the most recent Order setting discovery to end on January 18, 2021, and a motions deadline of February 17, 2021. Doc. 59.

During a mediation in 2019, Defendant learned non-party Cherokee Funding, LLC ("Cherokee") bought medical receivables from Plaintiff's healthcare providers, giving Cherokee a financial interest.  Doc. 36 at 1, 16.  Defendant then served a subpoena seeking various documents from Cherokee.  Id. at 25–26.  Cherokee objected to the subpoena, and, on May 8, 2020, Defendant filed a motion to compel.  Doc. 36.  On September 21, 2020, this Court granted in part and denied in part Defendant's motion to compel.  Doc. 47.  The Court found the discovery Defendant sought was not categorically inadmissible under the collateral source rule. Id. at 7–9.  The Court determined the documents sought fell within the scope of discovery because they could, potentially, be used to show bias on the part of Plaintiff's treating physicians at trial and the reasonableness and necessity of Plaintiff's medical expenses.  Id. at 9–14.  While the Court rejected Cherokee's general objections on confidentiality grounds, the Court stated it would consider a request for a protective order.  Id. at 17.

On September 25, 2020, Defendant and Cherokee filed a joint motion seeking a protective order.  Doc. 50.  Upon finding good cause, the Court granted the motion on September 28, 2020.  Doc. 51.  The Protective Order protects "trade secrets, proprietary business information, or other confidential information." Id. at 2.  Cherokee produced documents to

2

Defendant pursuant to this Court's September 21, 2020 Order. Doc. 47. Cherokee also produced certain documents involving an affiliated entity, Live Oak Servicing, LLC ("Live Oak"). Doc. 60 at 2. Of these produced documents, Cherokee designated some of the documents confidential, which meant dissemination of the designated documents was limited by the terms of the Protective Order. Docs. 57-6, 57-7, 57-8, 57-9. Defendant now challenges some of Cherokee's confidentiality designations in Defendant's "Amended Objection to Non-Party Cherokee Funding, LLC's Confidentiality Designations and Motion to Remove Same." Doc. 57.

Defendant also sought to depose Cherokee by serving a notice to take deposition on Cherokee. On December 3, 2020, Cherokee filed a Motion to Quash Defendant's notice to take a 30(b)(6) deposition of a Cherokee representative. Doc. 62. In the Motion to Quash, Cherokee did not oppose sitting for a deposition altogether, but, instead, challenged many of the 22 topics identified in Defendant's deposition notice as improper. While the Motion to Quash was pending, the parties went forward with the deposition on January 5, 2021. Doc. 64-10. Although the deposition has already occurred, Cherokee's Motion to Quash remains pending before the Court.

After the deposition, Defendant filed a Motion for Sanctions against Cherokee, seeking fees and expenses and asserting Cherokee failed to produce documents by the Court deadline, failed to prepare its 30(b)(6) deponent, and provided an affidavit earlier in this case (the "Ransom Affidavit") that was later contradicted by testimony given by Cherokee's 30(b)(6) representative. Doc. 64. Cherokee opposes the Motion for Sanctions in nearly every regard.

The parties filed a Joint Motion requesting an extension of all discovery through April 2021. Doc. 65. The Court held a hearing on all pending Motions on February 1, 2021. Counsel for all parties and non-party Cherokee appeared by video conference at the February 1, 2021

3

hearing. The Court announced its rulings during that hearing and further memorializes its rulings here.

## DISCUSSION

I.  **Objection to Confidentiality Designations**

Defendant object to Cherokee's designation of certain documents as confidential. Doc. 57. Defendant contends Cherokee did not meet its burden of showing the documents are entitled to protection. Id. at 3, 4–5. Defendant argues the entirety of the documents produced are not confidential and contends Cherokee should have instead redacted the confidential portions of the documents. Id. at 4–5. In response, Cherokee explains why each disputed document is confidential and entitled to protection. Doc. 60. At the February 1, 2021 hearing, the Court considered five categories of disputed documents.

A.  **Legal Standard**

Defendant's objection concerns discovery documents not filed with any substantive pre-trial motion. As a threshold matter, the common-law right of access to judicial proceedings does not apply to discovery material not filed with a substantive motion. Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1311 (11th Cir. 2001). Additionally, the constitutional right of access under the First Amendment has limited application in civil cases. Id. at 1310. Determining whether unfiled discovery documents are confidential is a matter largely within the district court's discretion. Id.; see Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36–37 (1984) (holding protective orders surrounding pretrial discovery did not violate First Amendment and was largely an issue within the discretion of the trial court).

"Where discovery materials are concerned, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure." Chicago Tribune, 263

F.3d at 1311 (citing McCarthy v. Barnett Bank of Polk Cnty., 876 F.2d 89, 91 (11th Cir. 1989)). Federal Rule of Civil Procedure 26(c) requires a showing of good cause by the party seeking protection from "annoyance, embarrassment, oppression, or undue burden or expense." Federal Rule 26(c)(1)(A) allows a district court to enter a protective order "requiring that a trade secret or other confidential, research, development, or commercial information not be revealed or be revealed only a specified way."  "Although difficult to define in absolute terms, [good cause] generally signifies a sound basis or legitimate need to take judicial action." In re Alexander Grant & Co. Litig., 820 F.2d 352, 356 (11th Cir. 1987).

Upon a showing of good cause, the Court granted a joint request for a protective order requiring certain information to be revealed only to select individuals involved with litigating this specific case.  Doc. 51.  Therefore, the main issues presented by Defendant's objections are (1) whether Cherokee has demonstrated the disputed documents met the definition of "Confidential Information" contained in this Court's September 28, 2020 Protective Order, and (2) whether Cherokee has demonstrated good cause to limit the use of these specific documents under the terms of the Protective Order.

When determining whether a party has shown good cause under Federal Rule of Civil Procedure 26(c), the court must first determine whether the information is in fact confidential. For example, to prove material contains trade secrets, the designating party must show (1) it "consistently treated the information as closely guarded secrets," (2) "the information represents substantial value," (3) the information would be valuable to competitors, and (4) the information "derives its value by virtue of the effort of its creation and lack of dissemination." Chicago Tribune, 263 F.3d at 1313–14.  On the other hand,"other confidential . . . commercial information" under Rule 26 has not been clearly defined by the courts.  Black's Law Dictionary

5

defines "confidential information" as "[k]nowledge or facts not in the public domain but known to some . . . ." Confidential Information, Black's Law Dictionary (11th ed. 2019). "Commercial" is defined as "[o]f, relating to, or involving the buying and selling of goods . . . ." or "[o]f, relating to, or involving the ability of a product or business to make a profit . . . ." Commercial, Black's Law Dictionary (11th ed. 2019). If the court concludes the material is confidential, the court must then balance the interest in keeping the material confidential against the public's interest in disclosure. Chicago Tribune, 263 F.3d at 1314–15.

### B.      Protective Order

This Court's September 28, 2020 Protective Order states, "The Receiving Party shall use the Confidential Information solely for the purpose of discovery, mediation, preparing for trial, and the trial of this lawsuit, including any appeals." Doc. 51 at 3. Thus, the Protective Order does not prevent Defendant from using any document designated as confidential in the course of litigating this case. The Protective Order only prevents Defendant from disclosing confidential information to unauthorized individuals. Id. at 3. The Protective Order permits disclosure to attorneys of record, experts or consultants, the parties, witnesses or deponents, court personnel, jurors, and mediators. Id. at 3–4.

The Protective Order defines "Confidential" as "discovery material contain[ing] trade secrets, proprietary business information, or other confidential commercial information of Cherokee." Id. at 2. The Protective Order states a producing party may designate discovery material as confidential by stamping the material as such, and no further designation is required. Id. The Protective Order does not constitute a finding that discovery material is confidential, and a party may file a motion with the Court to resolve a designation dispute within 45 days after production of the material. Id. at 4–5.

**C.     Analysis**

During the February 1, 2021 hearing, Defendant was unable to identify how it had been hindered or prejudiced in this action due to Cherokee's confidentiality designations. Rather, Defendant argued Cherokee's designations were improper, that Cherokee used similar boilerplate objections in other cases, and that Defendant was forced to litigate similar discovery issues in those other matters. Accordingly, Defendant argued it should be permitted to use—without limitation—documents it acquired in this litigation from Cherokee in other cases to show Cherokee's improper discovery tactics.

Cherokee, for its part, argued Defendant's concerns about discovery disputes in other cases do not constitute a legitimate reason for rejecting Cherokee's confidentiality designations in this case. Cherokee emphasized its right to assert challenges to discovery requests in other cases, as it has done in this case. Cherokee claimed Defendant's motivations are even broader than those represented by Defendant at the hearing. Cherokee suggested Defendant intends to share documents produced by Cherokee in this case with parties or lawyers in other cases—not involving Defendant—ostensibly to facilitate a concerted effort by defense attorneys to seek and obtain discovery from Cherokee.

The Court rejected these arguments. Defendant's stated desire to remove Cherokee's confidentiality designations in this case so it can use the documents in other cases is not a legitimate reason for overcoming otherwise proper confidentiality designations. Likewise, Cherokee's suspicions about Defendant's motivation as part of a coordinated effort by defense attorneys has no bearing on the issue before the Court. Rather, the Court need only determine whether Cherokee's documents were properly designated as confidential under the Protective

Order and whether disclosure of those documents should continue to be limited in accordance with the Protective Order.  Thus, the Court focuses on these inquiries.

### 1. CHEROKEE-000001–000004, 000039.[1]

The first set of documents designated as confidential and challenged by Defendant includes five separate documents.  Three documents are entitled "Single Case Agreement."  Doc. 57-6 at 1–2, 39.  These are agreements between Cherokee and medical providers.  Two documents are entitled "Cherokee Funding Patient Payment Detail."  Id. at 3–4.

Cherokee asserts these documents contain trade secrets or at least confidential commercial information.  Doc. 60 at 5–6.  Cherokee argues it keeps rates and payments confidential and does not share them beyond those individuals or entities involved in the transaction.  Id. at 6.  Cherokee argues disclosure of the rates would allow competitors to approach negotiations knowing this information, which would be very valuable to the competitors.  Id. at 7.  Cherokee states competitors could "enter[] into exclusive right-to-purchase or right-to-service agreements for a rate exceeding that offered by Cherokee or Live Oak."  Id.  Cherokee relies on an affidavit completed by a Risk Manager for Cherokee and former Risk Manager for Live Oak stating as much.  Doc. 60-1.  Further, Cherokee states there is little public interest in the disclosure of these documents because they only concern Plaintiff in this action.  Id. at 6.

Cherokee has met its burden in showing these documents contain confidential commercial information.  Thus, the documents fall within this Court's Protective Order and are subject to protection under Rule 26.  Defendant argues the rates contained in the documents

---

[1] The Court refers to each set of documents according to the Bates numbers assigned to them, as the parties refer to them as such in their briefing.  Doc. 57 at 2, n.1.  The disputed spreadsheet at issue, discussed below, does not contain Bates numbers.

should be disclosed because courts "have routinely permitted the unfettered disclosure of Medicare, health insurance, and third-party reimbursement rates." Doc. 57 at 5. However, the cases Defendant cites in support of this proposition only show courts will admit relevant testimony about the rates at trial, not that the rates are subject to public disclosure. See, e.g., Higgs v. Costa Crociere S.P.A. Co., 969 F.3d 1295, 1308 (11th Cir. 2020); Shawn v. Pressdee, 922 F.3d 1211, 1218 (11th Cir. 2019). As explained previously, a confidentiality designation under the Protective Order does not necessarily prevent a party from using the information within the confines of this case or at trial.

Moreover, the Court is not persuaded by Defendant's argument that Cherokee's rates should be treated the same as Medicare and health insurance rates. Doc. 57 at 6. Medical receivable purchasing and medical funding, generally, are not identical to the highly regulated Medicare and health insurance industry. Cherokee demonstrated it may sustain economic disadvantages if this information is made public. On the other hand, Defendant did not identify any public interest in the dislosure of this information, other than Walmart's desire to use the documents and information in other cases. Id. at 8. This is not a sufficiently heavy public interest when weighed against the damage disclosure could cause Cherokee. Chicago Tribune, 263 F.3d at 1314–15. There is no other discernible public interest in further dissemination of the agreements involving a single Plaintiff and single provider. The Court **FINDS** the confidentiality designations of these pages should remain in place.

As for Defendant's argument that Cherokee should have instead redacted the documents rather than labeling them confidential in their entirety, the Protective Order does not contemplate such a requirement. Doc. 51. The Protective Order states the producing party need only stamp

documents as confidential, which Cherokee did here, and no further designation is required. Id. at 2.

### *2.       CHEROKEE-000040–000054.*

The second set of documents consists of two agreements between Cherokee Funding and two of Plaintiff's healthcare providers entitled "Assignment of Medical Receivables." Doc. 57-6 at 40–50; Doc. 57-7 at 1–4. Each agreement contains a confidentiality clause where the medical provider agrees not to disclose the terms, except as required by law. Doc. 57-6 at 50. Even if the provider is required to disclose the terms by law, the provider must notify Cherokee so it can seek a protective order. Id.

Cherokee states it does not publicly disclose the terms of these agreements. Doc. 60 at 9. Cherokee states this is evidenced by the confidentiality clause within the agreements and its persistent efforts to prevent dislosure as a result of non-party discovery requests. Id. Cherokee argues competitors would be able to undercut them in negotiations with providers if they knew the specific terms of these agreements, which was supported by the Risk Manager's affidavit. Id.; Doc. 60-1 at 2–3. Cherokee has met its burden in showing these agreements are confidential, commercial information. Thus, they fall within this Court's Protective Order and are subject to protection under Rule 26. Again, the only purported public interest Defendant identified was its wish to use these agreements in other cases. This is not a sufficiently heavy interest when weighed against the potential harm to Cherokee. Chicago Tribune, 263 F.3d at 1314–15. The Court **FINDS** the confidentiality designations of these pages should remain in place.

### 3. *CHEROKEE-000065–000110.*

The third set of documents consists of three separate "Services Agreements" between Live Oak, an affiliated entity, and one of Plaintiff's healthcare providers. Doc. 57-7 at 15–23. The agreements contain a confidentiality clause similar to the above-discussed one. Id. at 20.

Cherokee argues these agreements are confidential commercial information for the same reasons the assignment of medical receivables agreements are. Doc. 60 at 10. Cherokee states competitors would be able to undercut Live Oak in negotiations if they knew the terms of these agreements. Id. Cherokee states Live Oak does not disclose these agreements outside of those who need to know. Id. These arguments are supported by the Risk Manager's affidavit. Doc. 60-1 at 2–3. Cherokee additionally points to the fact Live Oak was not served with a subpoena. Doc. 60 at 11. Cherokee states it only produced the Live Oak documents out of an abundance of caution, believing the agreements were within the scope of this Court's Order. Id.

Regardless of whether the agreements between Live Oak and the providers fall within the scope of the subpoena and this Court's Order, Cherokee has met its burden of showing these agreements are confidential, commercial information. Therefore, they fall within this Court's Protective Order and are subject to protection under Rule 26. Cherokee's interest in maintaining the confidentiality of the outweighs Defendant's interest in using the material in other cases. The Court fimds there is little public interest in agreements between the medical funding companies and individual providers when compared to the damage the companies could sustain due to disclosure. Chicago Tribune, 263 F.3d at 1314–15. The Court **FINDS** the confidentiality designations of these pages should remain in place.

### *4.     CHEROKEE-000055–000058 and CHEROKEE-000111–000116.*

This set of documents consists of checks issued by Cherokee to medical providers. Doc. 57-7 at 5–8; Doc. 57-8 at 11–16.  While Cherokee redacted the bank account numbers, the pages still contain the exact amount paid, check numbers, item sequence numbers, and the bank ID.  Id.

Cherokee maintains the checks are confidential, commercial information because a competitor could approximate the purchase rate and general terms of their agreements with the providers by looking at the checks.  Doc. 60 at 11–12.  Cherokee states it would not generally provide copies of checks to anyone outside of those individuals involved with the transaction.  Id. at 12 (citing Doc. 60-1 at 1–2).  Alternatively, Cherokee asserts there are privacy concerns associated with allowing the public disclosure of checks.  Id.  Cherokee states disclosure could compromise its bank accounts.  Id.

Cherokee has met its burden in showing the checks are confidential, commercial information.  Checks are typically kept out of the public domain by Cherokee and by most organizations for that matter.  Confidential Information, Black's Law Dictionary (11th ed. 2019).  The checks are issued during a transaction involving the purchase of medical receivables.  Commercial, Black's Law Dictionary (11th ed. 2019).  There is no discernible public interest in the further dissemination of individual checks associated with private transactions to outweigh the potential harm to Cherokee.  The Court **FINDS** the confidentiality designations of these pages should remain in place.

### *5.     The Spreadsheet.*

The final category consists of a single, largely redacted spreadsheet.  The spreadsheet is not Bates labelled.  At the February 1, 2021 hearing, Cherokee withdrew the confidentiality

designation of the spreadsheet in its redacted form. Doc. 57-8 at 42–50; Doc. 57-9. Accordingly, the Court **DENIES as moot** any objection as to the spreadsheet.

For these reasons, and the reasons stated at the February 1, 2021 hearing, the Court **DENIES** Defendant's Amended Objection to Non-Party Cherokee Funding, LLC's Confidentiality Designations and Motion to Remove Same. Doc. 57. Because Defendant subsequently submitted an Amended Motion, the Court **DENIES as moot** Defendant's first Motion. Doc. 56.

## II. Motion to Quash Defendant's Notice to Take Rule 30(b)(6) Deposition

Cherokee moved to quash Defendant's notice to take its Rule 30(b)(6) deposition, doc. 62, but before the Court ruled on that Motion, the parties went forward with the deposition. At the February 1, 2021 hearing, all parties agreed the Motion to Quash was moot. Therefore, the Court **DENIES as moot** Cherokee's Motion.

## III. Motion for Sanctions

Defendant argues it is entitled to sanctions from Cherokee for three reasons: (1) Cherokee did not produce all documents within the Court's deadline; (2) Cherokee did not prepare its deponent for the 30(b)(6) deposition; and (3) Cherokee submitted an affidavit in support of its Motion to Quash that was later contradicted by the deponent's testimony. Doc. 64. Cherokee opposes the Motion for Sanctions in every regard. Doc. 68.

In this Court's Rule 26 Order, the Court stated parties must attempt to informally resolve all discovery disputes before seeking Court intervention. Doc. 5 at 5–6. In the event parties cannot resolve their dispute, they must schedule a telephonic conference with the undersigned prior to filing any motions, including a motion seeking discovery sanctions. Defendant, a party to this case, did not schedule a telephonic conference with the undersigned prior to filing its

13

Motion for Sanctions. Thus, the Court found Defendant's Motion to be improper and is due to be denied, because Defendant did not exhaust the required steps required by this Court's Rule 26 Order prior to filing the Motion. Id.

Even considering Defendant's Motion, the Court finds Defendant's Motion fails on the merits. Defendant cites Federal Rules of Civil Procedure 37(b)(2)(A),(C) and 37(d) as the bases for its request for sanctions. Doc. 64 at 1. However, the plain text of these portions of Rule 37 only applies to parties and their agents. United States for Use & Benefit of Am. Builders & Contractors Supply Co. v. Great Am. Ins. Co., No. 3:12-MC-36-J-34, 2012 WL 12910657, at *1 (M.D. Fla. June 26, 2012) ("Because the instant motion involves a non-party, Rule 37 (which applies only to parties) is not applicable."). As previously discussed, Cherokee is not a party to this case. Federal Rule of Civil Procedure 45 governs discovery from nonparties. Rule 45(g) states a non-party which fails to comply with a subpoena may be held in contempt of court. Rule 45 does not expressly state attorney's fees and other costs (the sanctions Defendant seeks) are available against nonparties. Doc. 64 at 15–16; see Golden Krust Franchising, Inc. v. Clayborne, No. 8:20-MC-104-T-33, 2020 WL 7260774, at *2 (M.D. Fla. Dec. 10, 2020) (collecting cases and concluding fees could not be awarded against non-party).

Regarding Defendant's complaints about Cherokee's document production, in granting Defendant's motion to compel, the Court ordered Cherokee to produce documents within seven days on the (perhaps, mistaken) assumption Cherokee had already collected documents and the documents were ready for production. Doc. 47. It is undisputed Cherokee produced three rounds of documents. First, Cherokee produced some documents within the seven-day deadline. Second, Cherokee produced some additional documents within four days of the deadline; Cherokee asserts, despite its best efforts, it was unable to produce these documents within the

14

Court's seven-day deadline. Doc. 68. Third, Cherokee made a supplemental production soon after the 30(b)(6) deposition based on an exchange that occurred during that deposition. Id. Based on this record, the Court finds Cherokee acted in good faith in its efforts to comply with the Court's Order in producing documents and in supplementing its production promptly. Id.

Regarding the 30(b)(6) deposition, Defendant did not serve a subpoena on Cherokee for that deposition, as required by Federal Rule of Civil Procedure 45, but instead simply served a notice of deposition on Cherokee's counsel. While Cherokee voluntarily appeared at the deposition, there is no indication it was compelled to do so. The Court is aware of no authority that would allow it to impose sanctions on a non-party due to an unprepared witness at a deposition the non-party was not compelled to attend. Moreover, Cherokee moved to quash the notice of deposition, challenging certain topics in the notice. Defendant elected to move forward with the deposition before the Court ruled on the motion to quash. Defendant was entitled to do so, but it was certainly on notice many of the deposition topics were disputed. Regardless, the Court reviewed the entirety of the 30(b)(6) deposition and did not find the witness to be so unprepared that sanctions would be appropriate.

Regarding the purported inconsistencies between the Ransom Affidavit and testimony from Cherokee's 30(b)(6) representative, Defendant has not demonstrated sanctions are appropriate. The purported inconsistencies concern Cherokee's operational practices. The inconsistencies are not, in any direct way, indicative any sort of discovery abuse or misconduct by Cherokee. At most, the inconsistencies are just that—inconsistent statements by two different witnesses. Additionally, Cherokee asserts the statements are not actually inconsistent at all, and that, when considered in their respective contexts, the two statements can be reconciled. Doc. 68 at 21–23. The Court need not resolve whether the two statements are inconsistent in order to rule

on Defendant's Motion for Sanctions. However, Cherokee has offered a plausible characterization of the two statements, which demonstrates an absence of bad faith on Cherokee's part concerning the two statements. Regardless, Defendant has not demonstrated sanctions would be appropriate based on the submission of these two purportedly inconsistent statemements by a non-party and an employee of the non-party.

For these reasons, and for the reasons stated at the February 1, 2021 hearing, the Court **DENIES** Defendant's Motion for Sanctions.

IV.   **Joint Motion for Extension of Discovery**

On February 20, 2019, this Court entered a Scheduling Order setting the deadlines in this case. Doc. 16. The Court has since entered seven Amended Scheduling Orders granting extensions of deadlines. Docs. 23, 26, 28, 30, 34, 55, 59. Defendant states it needs additional time to possibly depose Cherokee's 30(b)(6) witness a second time and depose one of Plaintiff's healthcare providers. Defendant states it needs until April 2021 to complete this discovery. Upon due consideration, the Court **GRANTS in part** the parties' Motion and now sets forth the following deadlines.

| EVENT | DEADLINE |
|---|---|
| Discovery | March 1, 2021 |
| Post-Discovery Status Report[2] | March 3, 2021 |
| Post-Discovery Status Conference | March 8, 2021 |
| All Civil Motions (Including Daubert Motions; Excluding Motions in Limine) | April 1, 2021 |

---

[2]   A Status Report Form is available on the Court's website www.gasd.uscourts.gov under "forms." The parties are directed to use the content and format contained in this Form when reporting to the Court.

| Depositions of All Witnesses Taken for Use at Trial | May 10, 2021 |
| --- | --- |
| Proposed Pre-Trial Order | June 11, 2021 |

The Court **ORDERS** lead counsel for the parties to prepare and file with the Clerk of this Court a joint consolidated proposed pretrial order by June 11, 2021.  If a motion for summary judgment or other dispositive motion is pending at the time of this deadline, the deadline for filing the pretrial order and deposition of trial witnesses are automatically extended.  In such event, the parties shall file the proposed pretrial order **within 21 days** of this Court's ruling on the motion for summary judgment or other dispositive motion.

All other deadlines and instructions in the Court's previous Orders remain in full force and effect.  Docs. 16, 23, 26, 28, 30, 34, 55, 59.

## CONCLUSION

For these reasons, and for the reasons stated at the February 1, 2021, the Court **DENIES** Defendant's Amended Objection and Motion, doc. 57; **DENIES as moot** Cherokee Funding, LLC's Motion to Quash, doc. 62; **DENIES** Defendant's Motion for Sanctions, doc. 64; and **GRANTS in part** the parties' motion to extend discovery, doc. 65.  Because Defendant subsequently filed an Amended Motion, the Court **DENIES as moot** Defendant's first Motion regarding confidentiality designations.  Doc. 56.

**SO ORDERED**, this 9th day of February, 2021.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA